IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD L. HUGHES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **CIVIL ACTION NO. 2:10-CV-00347-KOB** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

The claimant, Richard L. Hughes, filed an application for disability insurance benefits on May 14, 2007, alleging disability beginning on August 15, 2006. The application was denied, and the claimant then filed a timely request for a hearing before an Administrative Law Judge (ALJ) on July 18, 2007. The ALJ held a video hearing on June 23, 2009. The claimant appeared in Anniston, Alabama, and the ALJ presided over the hearing from Memphis, Tennessee. In a decision dated August 28, 2009, the ALJ found that the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. The claimant then filed a request with the Appeals Council of the Social Security Administration, and the Appeals Council subsequently denied the claimant's request for review. The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be **REVERSED** and **REMANDED**.

1

## II. ISSUES

The claimant raises the following issues on appeal: whether the ALJ failed to establish good cause for rejecting the opinion of claimant's treating physician, Dr. Jariwala; and whether the ALJ failed to properly apply the pain standard to claimant's subjective complaints.

## III. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether substantial evidence in the record as a whole supports the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *See Richardson*, 401 U.S. at 401.

The court approaches the factual findings of the Commissioner with deference, but applies "an exacting examination" to the legal conclusions. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The substantial evidence standard permits administrative decision makers to act with considerable latitude, and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Even if this court would disagree with the Commissioner's findings, the court must affirm the findings if they are supported by substantial evidence. *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996).  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*[1], 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

The ALJ's findings must state specifically the "weight accorded to each item of evidence and why he reached such a decision." *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (quoting *Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)).  Failure to do so will make it "impossible for the reviewing court to determine whether the ... decision was ...rational and supported by substantial evidence." *Id.*  The ALJ is required to give "considerable weight to the treating physicians' opinion absent good cause." *Sharfarz v. Bowen*, 825 F.2d 278, 279-280 (11th Cir. 1987).  When the non-examining physician's opinion is contrary to that of the examining physician, then the non-examining physician's opinion is afforded little weight and cannot stand alone as substantial evidence.  *Id.* at 280.

The three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added).

## V.  FACTUAL HISTORY

On February 24, 2004, the claimant underwent surgery for a herniated disk at T11-T12. (R. 120-123).  Dr. Fred Burdette, one of the surgeons who operated on the claimant, noted that the claimant tolerated the procedure well and was in "satisfactory condition" when sent to recovery.  (R. 123).

On April 8, 2005, the claimant saw Dr. Vinod Mehta, an internist specializing in sleep

disorders, complaining of daytime hyper somnolence (excessive sleepiness) and snoring. (R. 155). Dr. Mehta found that the claimant had a sleep efficiency of 59.6% with 171 total apnea. He also reported that the claimant described "no change in ability to remember things or in concentration," adding that "[t]here has been no loss of coordination, no paresthesias and no weakness or loss of motor strength." (R. 155). Dr. Mehta described the claimant as "a well developed, morbidly obese 43 year-old male patient in no acute distress" and recommended that he maintain a lean body weight and begin using a CPAP machine. (R. 156-57).

The records of Dr. Milton G. Norrell, a family practice doctor, reflect that he treated claimant several times a month from December 4, 2006 through July 9, 2007 for left heel pain, at times severe; diabetic neuropathy of his feet; sleep apnea; insomnia; diabetes; hypertension; right foot drop, supposedly the result of a 1975 motorcycle accident; edema of the feet, ankles, and legs; and obesity; as well as infections and cough/cold symptoms. (R. 145-154). Dr. Norrell prescribed medications for claimant's ailments, including 1 cc. Ambien for sleep (3/14/07, 4/11/07); Decadron to relieve inflammation and swelling (12/4/06); a Medrol Dosepak to treat inflammation (12/4/06); 7.5 mg Lortab for moderate to severe pain (12/4/06, 12/21/06, 1/18/07, 2/23/07, 3/14/07, 4/11/07, 5/10/07, 6/6/07, 7/4/07); Lopressor 50 mg. for high blood pressure (12/21/06, 1/18/07) and 100 mg (1/18/07); Lotensin HCT 10/25 mg also to treat high blood pressure (12/4/06, 12/21/06, 1/18/07, 2/23/07, 3/27/07, 4/11/07, 5/10/07, 6/6/07, 7/4/07); Lyrica for pain caused by nerve damage (6/6/08); Metoprolol 100 mg to treat high blood pressure (4/11/07, 5/10/07); Restoril for sleep (4/11/07, 5/10/07, 6/6/07, 7/4/07); and Rozerem 3 mg for sleep (2/28/07). Dr. Norrell referred claimant to Dr. Christopher Roney, a pulmonary and sleep specialist, who examined claimant and ordered a sleep study. In August of 2007, Dr. Roney

noted that a polysomnography test performed on the claimant revealed evidence of 94 events an hour, and he diagnosed claimant's problem as "*very severe* obstructive sleep apnea." (R. 176) (emphasis added). Dr. Roney noted that Medicaid had agreed to provide claimant with a CPAP if he received a diagnosis of significant sleep apnea. (R. 179).

On February 9, 2007, the claimant presented to Dr. Robert Slaughter, a neurologist, complaining of numbness and pain in both feet. (R. 135). Dr. Slaughter noted that the claimant had "normal strength, bulk, and tone throughout with the exception of foot-drop in the right lower extremity." (R. 135). He also noted that the claimant's deep tendon reflexes were diminished in his lower extremities. Dr. Slaughter diagnosed the claimant with sensorimotor polyneuropathy (decreased ability to move or feel because of nerve damage) and prescribed Lyrica for his pain. (R. 136-36). On April 27, 2007, the claimant had a follow-up appointment with Dr. Slaughter, at which time Dr. Slaughter noted that an "MRI scan of the lumbosacral spine showed findings consistent with [the claimant's] age, but no significant findings." (R. 134). Dr. Slaughter also noted that a nerve conduction study showed that the claimant suffered from polyneuropathy and polyradiculopathy (diffuse root involvement) including lumbosacral radiculopathy (nerve irritation caused by damage to the discs between the vertebrae). (R. 134).

In April of 2007, Dr. Demetrius Morros, a radiologist, conducted an MRI of the lumbar spine, which showed a mild central disc protrusion at L3-4. (R. 129).

On June 21, 2007, Dr. Marcus Whitman, an orthopaedic surgeon who was a state agency medical reviewer, requested additional documents to assist him in his review: musculoskeletal CE, an x-ray of thoracic spine, and information about the old spine injury. (R. 140).

In the resulting July 2007 consultative disability examination of the claimant, Dr. James

Matic, a family practitioner, noted that the claimant has recurring numbness and pain in both of his legs as the result of diabetic neuropathy, as well as continuous pain in his lower back when he remains in a prolonged sitting or standing position or when he lifts or bends.  (R. 141).  The doctor's notes reflect a "reported absence of Monofilament test sensation in both feet."  (R. 142).  Dr. Matic also noted that, while the claimant suffers from sleep apnea, he does not take treatment for such disorder because he is unable to afford a CPAP machine.  Upon examination, while Dr. Matic noted that the claimant's spine had normal curves and full range of motion, motion of the claimant's lumbar spine caused moderate pain.  The claimant also had a mild limp on the right foot without an assistive device, and right foot drop, which causes balance problems.  (R. 142).

     In the subsequent physical RFC assessment dated July 12, 2007, Dr. Whitman reviewed claimant's records, including those of Dr. Matic, and determined that claimant experienced the following exertional limitations: he could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in a normal work day, sit about 6 hours in a normal work day, and push/pull for unlimited time subject to lifting limitations already noted.  (R. 168).  As to postural limitations, the reviewing doctor found that claimant could frequently climb ramp/stairs but could never climb ladder/rope/scaffolds; that he could occasionally balance, crawl and kneel; and that he could frequently stoop and crouch.  (R. 169).  As to environmental limitations, Dr. Whitman found the claimant should avoid concentrated exposure to hazards, such as machinery and heights, because of fluctuations in his ability to remain alert (R. 171-72).  When asked to list other symptoms not previously addressed, Dr. Whitman stated: "Cl alleges not being able to stand up w/o holding onto something.  His feet are numb.  Limited standing/walking, sits all day.  PCP normal, normal gait/stattion [sic], normal strength, decreased sensation LE. Neuro intact. Rt

ft drop. Dtr's symmetrical. Adls note limited activities. Functional limitations found partly credible." (R. 172).

On August 18, 2008, Dr. Hasmukh Jariwala, an internist, completed a form for the claimant in connection with an application for food stamps. (R. 192). On this form, Dr. Jariwala stated that he did not believe the claimant would be able to work because of his neuropathy in both legs, foot drop, and worsening degenerative joint disease.

## VI.  ADMINISTRATIVE PROCEEDINGS

### A.  Hearing

The claimant testified at a video hearing before the ALJ on June 23, 2009. At the time of the hearing, the claimant testified that he was 47 years old, 6'0 tall, and weighed 384 pounds. He testified that in the past fifteen years he had held the jobs of commercial truck driver, motor grader driver, and preacher. (R. 39, 41). When asked by the ALJ what prevented him from working, he testified that his "biggest complaint" was his neuropathy, which causes his feet, legs, and lower back to feel like they are asleep. (R. 40). He also feels "pins and needles" pain. Additionally, the claimant testified that, because of his sleep apnea, he did not believe he would be able to perform any kind of job requiring him to remain seated throughout the day. He now uses a CPAP machine, but even with its use, he sleeps poorly. (R. 43). Claimant testified that in 2006, he fell over asleep while driving a truck, and has been unable to do that job since that time. (R. 40, 44).

The record reflects that the ALJ did not call a VE to testify.

### B.  ALJ's Opinion

On August 28, 2009, under the authority of the Social Security Act, the ALJ applied the

five-step sequential evaluation process in determining that the claimant was not disabled. The ALJ first held that the claimant both meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since August 15, 2006, the alleged onset date of disability. (R. 13). In step two of his analysis, the ALJ found that claimant has the following severe impairments: diabetes mellitus, neuropathy, hypertension, and obesity. Next, in step three of the analysis, the ALJ held that the claimant did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 CFR Part 404. (R. 13).

     The ALJ determined that the claimant had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 CFR 404.1567(a), except with the limitation that "simple instructions" must be used "due to symptoms of sleep apnea." (R. 13). In reaching this conclusion, the ALJ discredited the opinion of Dr. Jariwala, the claimant's treating physician, because that opinion was "too generous and not supported by the rest of the record." (R. 15). The ALJ professed to have given greater weight to state agency medical consultants, even though they "did not examine the claimant," because "they provided explanations as to their opinions." (R. 16). Further, the ALJ discredited the claimant's claims that he was disabled because of pain and diabetic neuropathy, obesity, and disabling hypertension. The ALJ dismissed disability claims based on hypertension because repeated measurements reflect that it is generally well controlled; the record contains no documentation of stroke, heart failure, hypertensive nephropathy or any end-organ damage from hypertension; treating physicians do not document any symptoms attributable to hypertension since the alleged onset date; and no evidence of hypertensive manifestations exist that "could produce any significant functional limitations." (R.

16). The ALJ dismissed disability claims based on diabetic neuropathy or other diabetes-related disability because he claimed the record contained no documentation of diabetic nephropathy, diabetic peripheral neuropathy or any other end-organ damage from diabetes; treating physicians do not document any symptoms attributable to diabetes since the onset date; and no evidence exists of diabetic "manifestations that could produce any significant functional limitations." (R. 16). As to claimant's obesity, the ALJ acknowledged that the record reflected his obesity, but stated that the record "documents no obesity-related complications that would produce significant functional limitations." (R. 16).

Additionally, the ALJ found that the claimant was unable to perform any past relevant work, which his opinion incorrectly lists as a "housekeeping manager," because of the finding that his ability to work was now limited to the sedentary level. (R. 17). However, the ALJ found that he was able to perform several jobs that exist in significant numbers in the national economy. The ALJ acknowledged that claimant's ability to perform the full range of sedentary-level work "has been impeded by additional limitations." (R. 17). The opinion then states: "To determine the extent to which theses limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. 17). However, the transcript of the hearing does not reflect that the ALJ requested any testimony from a VE. The ALJ stated that such jobs include: taper, printed circuit layout, charge-account clerk, election clerk, and order clerk, among others. (R. 18). In light of the above reasoning, the ALJ held that the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act.

*C.  Appeals Council/Additional Submission*

On September 14, 2009, the claimant requested a review of the hearing decision.   The claimant presented a memo from Dr. Carolyn Dobbs, dated October 22, 2009, to the Appeals Council.  In this memo, the Dr. Dobbs noted that she had treated the claimant since July 30, 2009, and that, because of his medical problems, he may have difficulty standing for more than two hours out of an eight hour day. (R. 194).  Dr. Dobbs also suggested that the claimant should elevate his feet throughout the day. (R. 194).  The Appeals Council, however, determined that this new evidence was not substantial enough to change the ALJ's ruling, and on December 18, 2009, the Appeals Council denied his request for review.  (R. 1-3).

## VII.  DISCUSSION

*A.  Discrediting Treating Physician*

The claimant argues that the ALJ failed to articulate good cause for according less weight to the opinion of the claimant's treating physician, Dr. Jariwala.  For this reason, the claimant argues that the ALJ's opinion was not supported by substantial evidence and this court should, therefore, reverse and remand the decision.

The law in this circuit is well established that the ALJ must accord the opinions of treating physicians with substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).   A treating physician is claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [him], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]."  20 C.F.R. § 404.1502.  Absent a showing of *good cause* to the contrary, the ALJ cannot discount the treating physician's opinions.  *Id*.  However, if the ALJ decides to discount

the opinion of treating physicians, he must "clearly articulate" his reasons for doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In the instant case, Dr. Jariwala from Pell City, Alabama filled out a form in support of claimant's application for food stamps, opining that claimant was not able to work because of neuropathy in both legs, foot drop, and worsening degenerative joint disease, and that his condition was permanent. However, the record contains no evidence that Dr. Jariwala ever treated claimant; none of claimant's medical records are from Dr. Jariwala's office and none of the hospital records contain his name. Therefore, the claimant did not establish that Dr. Jariwala was his treating physician, and absent the establishment of such status, the ALJ had no obligation to accord substantial or considerable weight to Dr. Jariwala's opinion. However, the court notes that the ALJ's reasons for rejecting Dr. Jariwala's report were so general that they would be unhelpful to a "good cause" analysis.

## B. Pain Standard

The second issue that claimant raises on appeal is whether the ALJ properly applied the pain standard to claimant's subjective complaints of pain, edema, and neuropathy. The Commissioner's brief does not address this issue; its discussion focuses on the issue of whether substantial evidence supports the ALJ's rejection of Dr. Jariwala's report. The court acknowledges that the organization of claimant's brief is somewhat lacking. However, the brief specifically sets forth the pain standard on page 4; discusses on pages 5-7 the ALJ's application

of the pain standard and claimant's subjective testimony about edema, numbness, and pain caused by his diabetic neuropathy and back problems, as well as fatigue and concentration problems caused by sleep apnea; and argues on pages 7 and 9 that the ALJ ignores or fails to fully credit *not only* Dr. Jariwala's statement *but also* medical records documenting his subjective complaints of pain and edema associated with diabetic neuropathy. Therefore, the court determines that a fair reading of claimant's brief reflects that he raised the pain standard issue.

The three-part pain standard applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, if the ALJ decides not to credit a claimant's subjective testimony, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*.

In the instant case, the court finds that the ALJ adequately applied the pain standard to claimant's subjective complaints about the effects of *hypertension*. However, his application of

the pain standard to other subjective complaints warrants discussion.

As to claimant's complaints of pain and numbness associated with diabetic neuropathy, the ALJ acknowledges the underlying condition – diabetes and diabetic neuropathy – but finds that the claimant's testimony regarding the severity of that problem is not credible. His explanation for that finding is that the record contains no documentation, such as nerve conduction studies, of diabetic nephropathy, diabetic peripheral neuropathy or any other end-organ damage from diabetes; that physician records do not document symptoms attributable to diabetic neuropathy since the onset date; and that no evidence exists of diabetic manifestations that limit work function. However, the ALJ's explanation contains inaccurate statements. For example, contrary to the ALJ's statement, the record *does* indeed reflect that a nerve conduction study was performed on claimant in March of 2007 with a neurologist's report stating that the study showed polyneuropathy and also polyradiculopathy, probably caused by his diabetes.

The ALJ's statement that claimant's treating physician records do not document symptoms attributable to diabetic neuropathy since the onset date is similarly incorrect. The records of treating physician Dr. Norrell dated of 12/4/06, 12/21/06, 1/18/07, 2/23/07, 4/11/07, 6/14/07, 7/04/07 record complaints of foot/heel/leg pain with pain medication prescribed on a monthly basis, balance troubles, and diabetic neuropathy. Dr. Slaughter's records further document symptoms attributable to diabetic neuropathy since the onset date and also a diagnosis of diabetic neuropathy based on a nerve conduction study - not simply based upon claimant's subjective statements.

The ALJ's final explanation for his failure to fully accept claimant's characterization of his neuropathy is that "there is no evidence of diabetic manifestations that could produce any

significant functional limitation." (R. 16). However, the record shows not only the neurologist's diagnosis of neuropathy but also shows manifestations consistent with that diagnosis: complaints of pain, difficulty walking, numbness, and balance problems, which would indeed limit work function.

In short, the ALJ's pain standard analysis contains many troubling inaccuracies. At the end of the analysis, he attempts to resolve any error by "[g]iving the claimant the benefit of the doubt" and limiting his RFC to sedentary level work. (R. 16). Yet, because the full range of sedentary jobs[2] could also include some occasional standing, walking, and using foot controls/pedals, etc., the limiting of jobs to sedentary-level jobs does not completely take into account claimant's documented neuropathy-related problems. The ALJ failed to correct this problem by further limiting the full range of sedentary work, and even if he had placed corresponding limits on claimant's ability to perform the full range of sedentary work, he would have needed testimony of a vocational expert to explain what available jobs claimant could perform given those limitations. *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (when claimant cannot perform the full range of work at a given level, exclusive reliance on the grids is inappropriate, and the preferred method of establishing that claimant can perform other jobs is through VE testimony). This case included no VE testimony. For all these reasons, the

---

[2] Section 404.1567 of the Code of Federal Regulations, title 20, entitled "Physical exertion requirements" defines "Sedentary work" as follows: Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Social Security Ruling 83-10 elaborates on this section, providing that "'[o]ccasionally' means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday."

court finds that the ALJ erred in his application of the pain standard as to claimant's subjective complaints of the effects of his diabetic neuropathy.

The lack of VE testimony noted above particularly troubles the court. The Eleventh Circuit has found that the court is required to consult a vocational expert *"either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added in *Phillips*).

In the instant case, as noted above, the ALJ does not limit claimant's capacity to perform the full range of sedentary work *based on his neuropathy*, but the ALJ does purport to limit the full range of sedentary work *based on claimant's sleep apnea symptoms*. Specifically, the ALJ states: "Giving the claimant the benefit of doubt, the undersigned finds the claimant's current residual functional capacity is for sedentary work *with simple instructions* or unskilled, sedentary work *due to symptoms of sleep apnea*." (R. 16) (emphasis added). This focus on sleep apnea is particularly curious, because the ALJ did not list sleep apnea as a severe impairment in step two or discuss it in his pain standard analysis in step five, yet he purports to accept it – without explanation or analysis – as limiting claimant's work functions. In any event, the ALJ finds in step five that claimant cannot perform a full range of sedentary activities; he may only perform sedentary work with simple instructions. Thus, if this statement is correct, the ALJ was required to consult a VE to establish what sedentary jobs claimant could indeed perform.

The court also notes that the ALJ professed to give "greater weight to the opinion of the state agency medical consultants, but the RFC of Dr. Whitman, an agency medical reviewer,

found claimant's assertions of functional limitations to be "partly credible" and included postural and environmental limitations in his assessment. (R. 16, 169 - 172). If the ALJ accepted those limitations, he needed VE testimony to establish what sedentary jobs claimant could perform given those limitations. If he accepted part but not all of Dr. Whitman's assessment, his opinion should have been clear about which parts he accepted, instead of simply stating generally that he was according "greater weight" to that assessment.

Later, in numbered paragraph ten of the opinion, the ALJ's opinion changes from curious to "curiouser." There, the ALJ reconfirms that he has found that the claimant can perform less than a full range of sedentary work, stating "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. 17). This statement is not only curious but blatantly wrong, because the transcript reflects that no VE ever testified. The court recognizes that sometimes parts of opinions used as templates inadvertently remain in final opinions. To the extent, however, that the inclusion of the phantom VE was a recognition that VE testimony was needed, the ALJ was indeed correct. In finding that claimant could perform less than the full range of sedentary work, the ALJ needed the testimony of a VE to establish that claimant could perform jobs available in the national economy. His failure to obtain that testimony was error.

Finally, the court notes that claimant's brief also asserts that the ALJ erred – whether as part of his application of the pain standard or otherwise – in failing to recognize the effects of

claimant's edema and the need to raise his legs during the workday, as Dr. Dobbs's opinion stated. Given the rulings above, this court need not address this matter; the ALJ will have an opportunity to address it on remand.

In sum, the opinion in the instant case is replete with errors that warrant reversal and remand; substantial evidence does not support the ALJ's findings. In further proceedings below, the ALJ will have another opportunity to provide a complete list of claimant's severe impairments at step two, to apply the pain standard to all of his relevant subjective complaints, to use a VE to determine whether jobs exist that claimant can perform, and to ensure that the opinion contains accurate information.

## VIII.  CONCLUSION

For the above reasons, the court finds that substantial evidence does not support his decision. Therefore, the court will **reverse** the ALJ's decision and will **remand** it for a determination of whether the claimant is entitled to Disability Insurance Benefits.

A separate Order will be entered.

Dated this 29th day of March, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE